IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 27, 2010 Session

# SHAWN HOWELL, Individually and as Administrator for the Estate of JESSE FRANKLIN BROWNING, JR. v. CLAIBORNE AND HUGHES HEALTH CENTER

**Direct Appeal from the Circuit Court for Williamson County**
**No. 08625     Timothy L. Easter, Judge**

---

**No. M2009-01683-COA-R3-CV - Filed June 24, 2010**

---

This is a medical malpractice action. Appellant originally filed a claim in 2007 in the name of an estate. The original claim was subsequently non-suited. Less than one year later, the claim was then re-filed, also in the name of an estate. With permission of the court, the Appellant later amended the complaint to name the administrator of the estate as the plaintiff. However, upon the Appellee's motion, the trial court dismissed the complaint finding: (1) the complaint was barred by the statute of limitations as there were no allegations in the complaint which would invoke the savings statute; (2) the complaint failed to state with particularity the specific acts of negligence; and (3) that the Appellant failed to comply with the notice requirements for a medical malpractice action found in Tenn. Code. Ann. § 29-26-121. Finding that the trial court erred, we reverse the decision of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

A. Allen Smith, III, Goodlettsville, Tennessee, for the appellant, Shawn Howell.

David L. Steed, Nashville, Tennessee, for the appellees, Claiborne and Hughes Health Center.

**OPINION**

The first complaint in this case was filed on July 5, 2007, in the name of the "Estate of Jesse Franklin Browning, Jr.," against the Appellee herein, Claiborne and Hughes Health Center ("CHHC"). Mr. Browning had been a resident at CHHC from September, 2004 until July 19, 2006. Specifically, the complaint alleged that Mr. Browning died on July 20, 2006, as a result of severe dehydration due to the alleged negligent care and supervision he received at CHHC. The complaint did not identify any other individual or entity as a plaintiff, nor did the complaint assert that any proceedings had been initiated to create an estate for Mr. Browning. According to the Appellee's brief, CHHC filed a motion to dismiss the initial complaint. A copy of the "Motion to Dismiss or For More Particular Statement" does appear in the record as an attachment to one of CHHC's filings. In this motion CHHC argued that the original lawsuit should be dismissed as there was no named plaintiff in accordance with Tenn. Code. Ann. § 20-5-107[1] and the Tenn. Rules of Civil Procedure. The trial court heard arguments on this motion on October 15, 2007, and on October 29, 2007 entered an order granting CHHC's motion by ordering Plaintiff to file an amended complaint, "including a Plaintiff in compliance with the Tennessee Rules of Civil Procedure and Tenn. Code Ann. 20-5-107," within fifteen days. However, instead of amending the complaint, the Plaintiff chose to voluntarily non-suit its claim. A notice of voluntary non-suit was filed on November 2, 2007, and an order of voluntary non-suit was entered on November 28, 2007.

On October 6, 2008, a second complaint was filed. Like the initial complaint, the second complaint named the "Estate of Jesse Franklin Browning, Jr." as the plaintiff, and again did not identify any other individual or entity as a plaintiff, nor did this complaint assert that an estate had been opened for Mr. Browning. On November 7, 2008, CHHC filed a Tenn. R. Civ. P. 12 motion to dismiss the second complaint. For grounds, CHHC again asserted that the second complaint, like the first complaint does not include a proper plaintiff, and is, therefore, a nullity under Tenn. Code Ann. §20-5-107. In its motion, CHHC also argues that the second complaint should be dismissed because : (1) the complaint was barred by the statute of limitation because it was filed more than two years after Mr. Browning's

---

[1]Tenn. Code. Ann. § 20-5-107 details who may bring a claim for wrongful death:

> Prosecution of Action by representative or surviving spouse or next of kin-
> (a) The action may be instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or if there is no surviving spouse, by the children of the deceased or by the next of kin; also without the consent of the personal representative, either may use the personal representative's name in bringing and prosecuting the suit, on giving bond and security for costs, or in the form prescribed for paupers. The personal representative shall not, in such case, be responsible for costs, unless the personal representative signs the prosecution bond in an individual capacity.

death; and (2) in the event the case is not dismissed, Tenn. R. Civ. P. 12.05 requires a more definite or particular statement of the claim.

In response to CHHC's motion to dismiss the second complaint, Plaintiff's counsel filed a response brief on December 2, 2008, with the initial complaint and the order of voluntary dismissal attached thereto. In its brief, Plaintiff acknowledged the following:

> 3. The instant complaint was refiled on October 6, 2008. In anticipation of creation of the decedent's estate and appointment of his daughter, Mrs. Shawn Howell, as Administrator, the Complaint was refiled naming the "Estate of Jesse Franklin Browning, Jr." as the party Plaintiff.
>
> 4. At the time of his death, the decedent had four living [children].... Accordingly, bond waiver forms and waivers permitting Ms. Howell to serve as Executrix were sent to each of the decedent's surviving issue. Unfortunately, not all of the forms have been returned frustrating efforts to formally set-up the Estate, nevertheless, following diligent and good-faith efforts to contact all surviving issue. Counsel is, concomitant to this response, filing the Petition for the setting-up of the Estate and appointment of Ms. Howell as Administrator. The Petition is expected to be heard on December 18, 2008 in the Chancery Court, Probate Division for Williamson County, Tennessee.

Based upon the foregoing, on December 3, 2008, the Plaintiff filed a motion requesting leave to amend the October 6, 2008 complaint to list Shawn Howell, individually, and on behalf of the Estate of Jesse Browning, as plaintiff, and to include information concerning the filing of the original complaint, as well as its voluntary dismissal. Even though the record indicates that Mr. Browning was survived by a spouse, Plaintiff asserted that Tenn. Code Ann. §20-5-107 "expressly permits an action to be maintained by the surviving children of the deceased, including Ms. Shawn Howell." Plaintiff asserted that Mr. Browning's wife suffered from dementia at the time of the filing of the complaints. CHHC opposed the motion to amend the second complaint.

On December 8, 2008, the trial court heard CHHC's motion to dismiss and/or for more definite statement and the Plaintiff's motion to amend the complaint. By Order of January 8, 2009, the court granted the motion to amend the complaint. Specifically, the court allowed the Plaintiff to amend its complaint to include Ms. Howell as an individual plaintiff, and on behalf of the Mr. Browning's estate. Moreover, the court allowed Plaintiff to amend

its complaint to include allegations concerning the original complaint and its voluntary dismissal. Finally, the court granted CHHS's motion for a more definite statement, ordering amendment of the complaint to include "allegations regarding the specific acts...in this matter sufficient to give defendant notice of all acts that are alleged in this litigation, and the dates of such acts." The court reserved its ruling on CHHS's motion to dismiss, pending filing of the amended complaint. Pursuant to this order, Plaintiff had until January 7, 2009 to file an amended complaint.

On or about January 7, 2009, Plaintiff filed its first amended complaint.[2] This complaint listed "Jesse Franklin Browning, Jr., deceased by and through Shawn Howell, as next of friend of Jesse Franklin Browning, Jr" as the Plaintiff. This complaint was substantially the same as the original complaint. However, it included an allegation that his family, including Shawn Howell, suffered a loss of consortium and that therefore the Plaintiff is entitled to damages.

Also on January 7, 2009, Plaintiff filed a motion for extension of time to file its amended complaint and motion for extension of time pursuant to Tenn. Code Ann. §29-26-121 (which requires a plaintiff to give sixty days notice prior to filing a medical malpractice claim), and Tenn. Code Ann. §29-26-122 (which requires a Certificate of Good Faith).

Plaintiff, also on January 7, 2009, filed a motion requesting permission to file a second amended complaint. In this motion, Plaintiff asserts that he seeks to amend the complaint to name Shawn Howell, Administrator of the Estate of Jesse Franklin Browning, Jr., as the party Plaintiff. The motion asserted that Ms. Howell filed a petition to be named the administrator of the estate on December 18, 2008, but that the Chancery Court had "passed on" the petition. According to the motion, the Plaintiff expected Ms. Howell to be named the administrator of the estate within the next sixty days. Plaintiff also asserted that he was in the process of providing notice to the defendants pursuant to Tenn. Code. Ann. § 29-26-121 and in obtaining a good faith certificate pursuant to Tenn. Code Ann. § 29-26-122. Based on these facts, Plaintiff requested permission to amend his complaint a second time.

In response, CHHC filed a renewed motion to dismiss on April 6, 2009. In this renewed motion, CHHC asserted that the first amended complaint should be dismissed because (1) it was barred by the statute of limitations, (2) the complaint had not been amended to name a Real Party in Interest as ordered, (3) Plaintiff had not filed a certificate

---

[2]A copy of Plaintiff's first amended complaint marked as filed does not appear in the record. However, there is a copy of the first amended complaint in the record marked "Received January 7, 2009 Circuit Court." Both parties through their respective briefs appear to concede that there were two amended complaints filed.

of good faith as required by Tenn. Code Ann. § 29-26-122( c ) or notice as required by Tenn. Code. Ann. § 29-26-121(b), and (4) that the complaint fails to state with particularity the basis for liability.

On April 30, 2009, CHHC filed a motion to rehear its motion to dismiss. The motion indicates that the motion to dismiss was taken under advisement on April 13, 2009. Again, CHHC argues that the trial court should dismiss Plaintiff's first amended complaint.

A hearing on all pending motions was held on May 11, 2009. At that hearing, the court considered additional authority filed by the parties, as well as their respective proposed findings of fact and conclusions of law. By Order of May 22, 2009, the trial court denied CHHC's motion to dismiss the complaint and the first amended complaint. The trial court granted the Plaintiff's motion to file a second amended complaint, thereby giving Plaintiff until June 22, 2009 to file a complaint "naming the proper real party in interest as previously ordered by the court." In addition, Plaintiff was given until June 22, 2009 to "comply with the notice and filing provisions of [Tenn. Code Ann.] §29-26-121 and [Tenn. Code Ann.] §29-26-122." In reaching its decision, the court made the following, relevant comments:

> The Court acknowledges that this is its second Order in which the Court is allowing the Plaintiff an opportunity to properly present its Complaint for prosecution of their alleged claims in this matter.

The trial court also specifically found that CHHC's opportunity to raise the defenses of: (1) statute of limitations (under Tenn. Code Ann. §§29-26-116 and 28-3-104), (2) failure to comply with Tenn. Code Ann. §28-1-105(a), and (3) non-compliance with Tenn. Code Ann. §§29-26-121 and 29-26-122 "shall not be lost and shall survive for future potential argument and defense."

On June 22, 2009, Plaintiff filed its second amended complaint in the name of the Appellant, "Jesse Franklin Browning, Jr., by and through Shawn Howell, as Administrator of the Estate of Jesse Franklin Browning, Jr., Deceased."[3] This complaint is substantially similar to the others. The complaint included an allegation that Mr. Browning's family, including his wife Dorothy Browning, had suffered a loss of consortium and that therefore Plaintiff was entitled to damages. Plaintiff attached to the amended complaint a copy of a

---

[3]The second amended complaint is styled "Amended Complaint." However, it is clear from the record that this is actually the second amended complaint.

letter sent by the attorney to CHHC's agent, providing notice of the potential claim.[4]  Also, on June 22, 2009, in an effort to comply with Tenn. Code Ann. §29-26-122, the Plaintiff filed a Certificate of Good Faith which indicated that the Plaintiff's attorney had consulted with an expert who found merit in Plaintiff's claim.

On July 7, 2009, CHHC filed a motion to dismiss the second amended complaint.  In relevant part, CHHC argued that the case was barred by the statute of limitations because it was filed more than a year after Mr. Browning's death, that the Savings Statute was not invoked or even pled, and that there was no "commencement" of an action within the statute of limitations for purposes of the Savings Statute, even if it had been pled.

The motion was heard on July 20, 2009.  By Order of August 3, 2009, the court granted the motion, thereby dismissing Plaintiff's second amended complaint.  Specifically, the court found that:

> 1.  The case is barred on its face by the statute of limitations, in that the pleadings establish that the case was filed more than a year after the death of Jesse Browning on July 19, 2006.  There are no allegations in the [Second] Amended Complaint filed on June 22, 2009 that avoid the application of the statute of limitations.  There are no facts stated in the Second Amended Complaint that would invoke the Savings Statute; in fact, the Savings Statute is not even referenced in the Second Amended Complaint, nor is there any allegation of "commencement" of an action within the statute of limitations for purposes of the Savings Statute.  The court twice previously permitted Plaintiff to amend the Complaint to respond to issues raised by Defendant's Motions to Dismiss.  The Court's Order of January 8, 2009 permitted amendment and stated that no further amendments to the pleadings would be permitted.  The Court nevertheless again permitted Plaintiff to amend the Complaint by Order dated May 22, 2009.  Despite these two amendments to the Complaint, the "four corners" of the Complaint still demonstrate that the case is barred by the one year statute of limitations.

The court also based its decision to dismiss the complaint on its finding that the complaint

---

[4]We note that the parties dispute whether the agent to whom the letter was addressed, was the authorized agent for CHHC. Based on our decision below, we do not find this dispute to be material.

failed to state, with particularity the specific acts of negligence, with dates, as required by the Court's previous order. The court also found that Plaintiff had failed to deliver notice to CHHC prior to June 22, 2009, as required under Tenn. Code Ann. §29-26-121 and ordered by the court.

Ms. Howell, as administrator of the estate, appeals, raising three issues for review as stated in the brief:

> 1. The trial court erred by dismissing the Plaintiff/Appellant's case based upon a failure to specifically plead the savings statute, Tenn. Code Ann. §28-1-105(a), within the "four corners" of the complaint.
>
> 2. The trial court erred by granting the Defendant/Appellee's motion for a more particular statement and erred again by dismissing the action based upon a lack of particularity contained in the second amended complaint.
>
> 3. The trial court erred by dismissing the complaint based upon a failure to deliver notice to Defendant pursuant to Tenn. Code Ann. §29-26-121.

### *Standard of Review*

It is well settled that a Tenn. R. Civ. P. 12.02 motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations but asserts that such allegations do not constitute a cause of action as a matter of law. *See **Riggs v. Burson***, 941 S.W.2d 44 (Tenn.1997). Obviously, when considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to the examination of the complaint alone. *See **Wolcotts Fin. Serv., Inc. v. McReynolds***, 807 S.W.2d 708 (Tenn. Ct. App.1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See **Cornpropst v. Sloan***, 528 S.W.2d 188 (Tenn.1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. See ***Cook by and through Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934 (Tenn.1994).

However, if a party files a motion to dismiss and includes matters outside the pleadings, the trial court, upon considering the matters outside the pleadings, must review

the motion as a motion for summary judgment pursuant to Tenn. R. Civ. P. 56. Tenn. R. Civ. P. 12.02; *see **Staats v. McKinnon***, 206 S.W.3d 532, 543 (Tenn. Ct. App. 2006). A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells,*** 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." ***Mathews Partners, LLC v. Lemme,*** No. M2008-01036-COA-R3-CV, 2009 WL 3172134 at *3 (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50-51 (Tenn. 1977).

### *Savings Statute*

Pursuant to Tenn. Code Ann. § 28-1-105 ( the "Savings Statute,") a voluntarily dismissed lawsuit may be re-filed within one year of such dismissal:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, ... the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest....

Because Tennessee law favors the resolution of disputes on their merits, the Savings Statute must be given a broad and liberal construction. ***Henley v. Cobb***, 916 S.W.2d 915, 916 (Tenn.1996). The purpose behind the Savings Statute is "'to aid the courts in administering the law fairly between litigants without binding them to minor and technical mistakes made by their counsel in interpreting the complexities of our laws of procedure.'" *Id*. at 917 (quoting ***Gen. Accident Fire & Life Assurance Corp. v. Kirkland***, 210 Tenn. 39, 356 S.W.2d 283, 285 (1962)). To determine whether the Savings Statute is applicable, the court must ascertain whether the defendant had notice: "[N]otice to the party affected is the true test of the statute's applicability.... 'The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts.'" ***Id.*** at 917-18 (quoting ***Burns v. People's Tel. & Tel. Co.***, 161 Tenn. 382, 33 S.W.2d 76, 78 (1930)). Thus, the Savings Statute is only applicable when the original complaint and the new complaint allege substantially the same cause of action, which includes identity of the parties. *See **Turner v. Aldor Co. of Nashville***, 827 S.W.2d 318, 321 (Tenn. Ct. App.1991). It is not necessary that the two complaints be identical, only that the allegations arise out of the same transaction or occurrence. *See **Energy Sav. Prods., Inc. v. Carney***, 737 S.W.2d 783, 784-85 (Tenn. Ct. App.1987) (holding that the Savings Statute was applicable to the second complaint, which had been amended to add a new claim, because

the claim arose out of the same conduct, transaction, or occurrence alleged in the original action and the plaintiff, therefore, could have added the claim to the first action under Tenn. R. Civ. P. 15). In determining whether there is identity of the parties between the two actions, we are mindful that, though the caption of a case is intended to identify the parties, the allegations of the complaint itself dictate the true parties to the lawsuit. ***Goss v. Hutchins***, 751 S.W.2d 821, 824-25 (Tenn.1988).

A plaintiff relying upon the Savings Statute has the burden of showing that the case is not barred by the statute of limitations, if that question is raised by the defendant:

> As enunciated in *East Tennessee Coal Co. v. Daniel*, when the plaintiff's declaration shows upon its face that the claim sued upon is barred by the statute of limitations, then a plea of the statute interposed by the defendant will shift the burden of producing evidence to the plaintiff who must show that his action falls within the saving statute; i.e., he must prove that his original action was instituted within one year after the taking occurred.

***Knox Co. v. Moncier***, 455 S.W.2d 153, 157 (Tenn. 1970).

In this case, it is undisputed that Mr. Browning died on July 20, 2006, and that the initial complaint was filed on July 5, 2007. Following the November 28, 2007 non-suit, the case was re-filed on October 6, 2008, which would be outside the one-year statute of limitations, Tenn. Code Ann. §§ 28-3-104 and 29-26-116, unless the Savings Statute is applicable. If, however, the Savings Statute is not applicable, then the October 6, 2008 filing is outside the one-year statute of limitations, and the case was properly dismissed. To determine whether the Savings Statute is applicable in this case, we first address whether the original action was "commenced" within the meaning of the Savings Statute. Rule 3 of the Tennessee Rules of Civil Procedure provides simply that "[a]ll civil actions are commenced by filing a complaint with the clerk of the court." Tenn. R. Civ. P. 3 describes some circumstances under which the original commencement may not toll the statute of limitations, as where process is not issued within thirty days or not served within thirty days of issuance and the plaintiff fails to obtain issuance of new process within the prescribed time. *Id*. Rule 3 does not, however, address the effect of the filing of a lawsuit by an improper party. *See id*.

Our Supreme Court in ***Chapman v. King***, 572 S.W.2d 925 (Tenn. 1978) discussed whether the proper party in a wrongful death case should be allowed to be substituted as the real party in interest after the statute of limitations expired. Like this case, ***Chapman*** was

a wrongful death case. *Id.* at 926. In Chapman, however, the action was originally filed by the parents of the decedent. *Id.* Unfortunately, the parents were not the proper party to file the lawsuit as the wrongful death statute granted that right exclusively to the decedent's husband. *Id.* The ***Chapman*** defendants filed a motion to dismiss on the basis that the parents had no right of action. *Id.* The decedent's husband then moved to be substituted as the plaintiff. *Id.* However, this was done after the statute of limitations expired and the trial court denied his request for substitution. *Id.* 926-27.

In reversing the trial court, our Supreme Court reviewed Tennessee Rule of Civil Procedure 17.01 and 15.03. *Id.* at 927. The ***Chapman*** court recognized that the parents of the decedent had no right to bring the action, but still held that the trial court erred in dismissing the action and not allowing the husband to be substituted as the plaintiff. *Id.* The Chapman court noted that Tenn. R. Civ. P. 17.01 provides in pertinent part:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification or commencement by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

The ***Chapman*** court noted the "liberality of this Court in allowing the addition or substitution of a proper party plaintiff for an improper plaintiff although the statute of limitations would have prevented the filing of a new suit...." *Id.* (citing Committee Comment to Rule 15.03, Tenn. R. Civ. P.).[5] The ***Chapman*** court then specifically noted, that "[t]he cases in which

---

[5]As provided in ***Chapman,*** the Committee Comment to Rule 15.03 of the Tenn. R. Civ. P. 15.03 provides:

> Under prior law, an amendment which added a new party plaintiff or substituted a party plaintiff, related back to the institution of the original suit, and thus could be made even though an applicable statute of limitations would have barred a new suit by the new or substituted party.
>
> \*                             \*                             \*
>
> But where the amendment sought relief against a new party defendant after the statute of limitations has barred a new suit, such defendant could successfully plead the bar.

(continued...)

this liberality has been most evident have been wrongful death actions in which a wrong party has brought the suit." *Id.* at 928 (citations omitted). As explained in ***Chapman***, "the reason for this liberal policy in wrongful death cases has been the fact that the cause of action is not changed by the substitution of the proper party plaintiff for the improper plaintiff,...and that such a substitution does not prejudice the defendant who has had notice, from the beginning of the suit, of the nature of the cause of action and that it was being pressed against him." *Id.* (internal citations omitted). The Chapman court turned to the reasoning behind the Fed. R. Civ. P. 17.01 with respect to substitution of a plaintiff after the statute of limitations had run, holding that:

> it has come to be settled law that where, either by mistake of law or fact, a suit is brought in the name of a wrong party, the real party in interest, entitled to sue upon the cause of action declared on, may be substituted as plaintiff...; but the substitution of the name of the proper plaintiff has relation to the commencement of the suit, and the same legal effect as if the suit had been originally commenced in the name of the proper plaintiff.

*Id.* (citing ***Wallis v. United States***, 102 F. Supp. 211, 212 (E.D.N.C. 1951). Our Supreme Court held that based on Tenn. R. Civ. P. 17.01, the husband, as the real party in interest should be allowed to substitute as the plaintiff, and that the substitution "'shall have the same effect as if the action had been commenced in the name of the real party in interest.'" *Id.* at 929.

This Court previously addressed a similar issue in ***Foster v. St. Joseph Hospital***, 158 S.W.3d 418 (Tenn. Ct. App. 2004). In ***Foster***, the decedent's husband gave his grand-nephew power of attorney. *Id.* at 419. The grand-nephew then filed a wrongful death action against the hospital and doctors, alleging medical malpractice. *Id.* The grand-nephew then voluntarily non-suited the first action. *Id.* No objection to his capacity to file the lawsuit was made prior to the action being dismissed. *Id.* However, he then re-filed the action outside the statute of limitations, but within the one-year savings statute, and added the decedent's husband as a plaintiff. *Id.* The defendants filed a motion for summary judgment arguing that the second action was barred by the statute of limitations. *Id.* The trial court in ***Foster*** granted the motion, finding that the grand-nephew was not a proper party and therefore the first action was a nullity and did not toll the statute of limitations. *Id.* On appeal, this Court reversed the trial court, holding that the first lawsuit was merely voidable and the second

---

[5](...continued)
***Chapman***, 572 S.W.2d at 927-28.

lawsuit was filed within the time period provided by the savings statute. *Id.*

In reversing the trial court, the *Foster* court reviewed the purpose of the savings statue. As stated in *Foster*, "Tennessee law favors the resolution of disputes on their merits, [therefore] the savings statue must be given a broad and liberal construction. *Id.* at 420 (citing *Henley v. Cobb*, 916 S.W.2d 915, 916 (Tenn. 1996)). The *Foster* court then reviewed the Tennessee Rules of Civil Procedure and the case of *Chapman v. King*, 572 S.W.2d 925 (Tenn. 1978), in order to determine whether the original action was "commenced" for purposes of the savings statute. *Id.* at 422. The *Foster* court noted the "liberality" that should be applied, as instructed by our Supreme Court, in permitting the proper party to be substituted for an improper party, even after the expiration of the statute of limitations. *Id.* at 424. Recognizing the "avowed liberality" of the Tennessee Supreme Court, this Court held that the trial court erred in finding that the original lawsuit was a nullity, reasoning that "[c]learly, under *Chapman*, if the Defendants had sought to have the [original] lawsuit dismissed on the grounds that the [grand-nephew] was not the proper party plaintiff, [the grand nephew] would have had an opportunity to substitute the proper party plaintiff." *Id.* Therefore, this Court found that the original lawsuit did "commence" the action for purposes of the savings statute. *Id.*

The case before this Court is strikingly similar to *Foster.* In the instant case, the original lawsuit was filed in the name of the Estate of Jesse Franklin Browning, Jr. As with *Foster*, the original lawsuit was not filed in the name of a proper party plaintiff, and the original lawsuit was voluntarily non-suited and then re-filed outside the statute of limitations, but within the time period provided by the savings statute. However, there are some differences between this case and *Foster:* (1) there was an objection filed by the Appellees in the original lawsuit, unlike *Foster*; and (2) the second complaint was not filed in the name of the real party in interest, also unlike *Foster*. Accordingly, we must determine whether these differences result in an outcome contrary to *Foster*. After reviewing the record and the law on this issue, we find that they do not.

As the Appellees aptly point out, unlike *Foster*, they filed an objection to the original lawsuit by filing a motion to dismiss. However, the trial court adjudicated that motion, and in accordance with *Chapman*, declined to dismiss the first action and instead granted the Appellant time to amend the complaint to name a proper plaintiff. The Appellant however, chose to take a voluntary non-suit instead of amending the complaint to name a proper plaintiff at that time. Had the Appellant not chosen to take a voluntary non-suit, clearly, based on *Chapman*, it would have been permitted to substitute a proper party plaintiff, even after the expiration of the statute of limitations. Accordingly, the question becomes: did the Appellant forfeit the right to amend the complaint to name a proper party plaintiff by taking a voluntary non-suit. We find that it did not. The savings statute confers on a plaintiff, who

-12-

voluntarily non-suits a prior action, the same procedural and substantive benefits that were available to the plaintiff in the first action. *Parnell v. APCOM, Inc.*, No. M2003-00178-COA-R3-CV, 2004 WL 2964723, at*5 (Tenn. Ct. App. Dec. 21, 2004)(citing *Dukes v. Montgomery County Nursing Home*, 639 S.W.2d 910, 913 (Tenn. 1982). Accordingly, the Appellant did not forfeit the right to amend the complaint, even outside the statute of limitations, in order to name a proper party plaintiff. This is especially so considering our Supreme Court's specifically expressed policy of liberality in permitting the substitution of a proper party plaintiff for an improper party plaintiff after the expiration of the statute of limitations, particularly in wrongful death cases. *See Chapman*, 572 S.W.2d at 928.

The Appellees submit that based on *Foster*, because they filed an objection in the original action, the first action was void and therefore not "commenced" for purposes of the statute of limitations. We disagree. *Foster* held that because the grand-nephew would have been entitled to amend his complaint to name a proper party plaintiff, even outside the statute of limitations, the original lawsuit was voidable and not void. *Foster*, 158 S.W.3d at 424. To support this finding, the *Foster* court also noted that there was no case law to indicate that the grand-nephew could not have prosecuted the claim to conclusion absent an objection from the defendants. *Id.* Like *Foster*, the original lawsuit was only voidable because the Appellant, as the trial court found, had the right to amend its complaint to name the proper party plaintiff. If the Appellant had not non-suited its action, the trial court could have dismissed the claim if the Appellant did not properly amend the complaint within the time period provided by the trial court. However, the trial court declined to do so when adjudicating CHHC's motion to dismiss in the first action. Consequently, the fact that the Appellees filed a motion to dismiss based upon the absence of the proper party plaintiff, does not affect this Court's determination that an action was "commenced" for purposes of the savings statute.

Finally, we do not find the fact that the second action was also not commenced in the name of the proper party plaintiff to be determinative. As stated, clearly, the Appellant had the right to amend the complaint within a reasonable time to name the real party in interest. *See Chapman*, 572 S.W.2d at 928**; *Foster*, 158 S.W.3d at 424; Tenn. R. Civ. P. 17.01. The trial court, in the second action, granted the Appellant the right to amend the complaint twice. The Appellees have not raised an issue with this decision on appeal, and therefore error, if any, is waived. *Osborne v. Mountain Life Ins. Co.*, 130 S.w.3d 769, N.6 (Tenn. 2004). The second amended complaint was filed in the name of "Jesse Franklin Browning, Jr., by and through Shawn Howell, as Administrator of the Estate of Jesse Franklin Browning, Jr., Deceased. Therefore, it was filed in the name of the proper party plaintiff. Tenn. Code. Ann. § 20-5-107. Moreover, as provided in *Chapman*, the substitution of the proper party, shall have the same effect as if the action had been commenced in the name of the real party in interest.

In making these determinations, this Court is cognizant of the fact that neither the original lawsuit nor the original complaint in the second lawsuit was filed in the name of the proper party plaintiff. However, we are mindful that the purpose of the Savings Statute is "'to aide the courts in administering the law fairly between litigants without binding them to minor and technical mistakes made by their counsel in interpreting the complexities of our laws and procedure,'" *Henley*, 916 S.W.2d at 917. Moreover, Tennessee law favors the resolution of disputes on their merits, therefore the Savings Statute is given a broad and liberal construction. *Id.* As discussed in *Foster* and *Chapman*, the important consideration in determining the applicability of the savings statute is timely notice to the defendants. Here, CHHC, had notice of the claim within the statute of limitations. Therefore, they had the ability to take the appropriate action to protect themselves.

For the foregoing reasons, this Court finds that the original action was "commenced" for purposes of the savings statute. We must now determine whether the savings statute was applicable.

The only issue on appeal as to the applicability of the savings statute is the identity of the parties. The Appellees assert that because the present action was brought in the name of Shawn Howell, who is not mentioned in the original action, there is no identity of parties. We disagree. In determining whether there is identity of the parties between the two actions, we are mindful that, though the caption of a case is intended to identify the parties, the allegations of the complaint itself dictate the true parties to the lawsuit. *Goss v. Hutchins*, 751 S.W.2d 821, 824-25 (Tenn.1988). Both the original complaint and the second amended complaint in the present lawsuit allege a cause of action based upon the wrongful death of Mr. Franklin Browning, Jr. As held in *Chapman*, wrongful death cases are often instituted in the name of an improper party, but that does not change the change the nature of the cause of action or prejudice the defendants. *Chapman*, 572 S.W.2d at 928. Also, while not a proper party, the original action was brought in the name of the Estate of Franklin Browning, Jr. Ms. Howell merely serves as a representative of Mr. Browning's estate in the present lawsuit. Accordingly, we find that for purposes of the savings statute, there is an identity of parties.

We next address the trial court's decision to dismiss the Appellant's action for failure to plead facts which would invoke the Savings Statute. CHHC contends that because it was proceeding on a motion to dismiss, the trial court was only allowed to consider the allegations contained in the complaint. (Citing this Court's explanation of the standard of review for a Motion for Dismiss as stated in *421 Corp. v. Metropolitan Govt' of Nashville*, 36 S.W.3d 469 (Tenn. Ct. App. 2000). According to CHHC, it was entitled to a dismissal because the Appellant's complaint failed to state any facts which would invoke the savings statute.

-14-

CHHC fails to recognize that often motions to dismiss are converted into and considered as motions for summary judgment when matters outside the pleadings are considered. This is such standard practice that Tenn. R. Civ. P. 12.02 provides the procedure for dealing with such motions, requiring "[i]f...matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Accordingly, if a party files a motion to dismiss and includes matters outside the pleadings, the trial court, upon considering the matters outside the pleadings, must review the motion as a motion for summary judgment pursuant to Tenn. R. Civ. P. 56. Tenn. R. Civ. P. 12.02; *see **Staats v. McKinnon***, 206 S.W.3d 532, 543 (Tenn. Ct. App. 2006). In this case, CHHC admitted that a suit was previously filed in its response to the Appellant's reply to its first motion to dismiss filed December 10, 2008. Further, CHHC attached to this response its motion to dismiss from the original lawsuit along with the order of non-suit. These matters were clearly outside the pleadings of this case. Further, as stated in the order dismissing the action, the trial court considered "the entire record in this matter...." Consequently, the trial court should have reviewed CHHC's motion as a motion for summary judgment pursuant to Tenn. R. Civ. P. 56.

Because the trial court was required to review the motion as a motion for summary judgment, we find, after reviewing the record, that the trial court erred in dismissing the Appellant's claim for failure to plead the Savings Statute. After reviewing the entire record, we find that there are no genuine issues of material fact. We find that the parties do not dispute when the original action was filed or dismissed, nor when the present action was re-filed. It is clear that the present action was filed within one year of the order of voluntary non-suit as required by the Savings Statute. Tenn. Code Ann. § 28-1-105. Based on the undisputed facts, we find that the Appellee's motion to dismiss should have been denied as a matter of law as the Appellant fully complied with the Savings Statute.

### *Particularity of the Complaint*

Next, we address Appellant's contention that the trial court erred in dismissing the complaint for failure "to state with particularity the specific acts of negligence, with dates, as required by the [trial court's] previous order...." Tenn. R. Civ. P. 8 governs pleadings and provides, in pertinent part:

> **8.01 Claims for Relief**.- A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain: (1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

-15-

*              *              *

**8.05 Pleading to Be Concise and Direct-Statutes, Ordinances and Regulations-Consistency.** - (1) Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required. Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. The substance of any ordinance or regulation relied upon for claim or defense shall be stated in a separate count or paragraph and the ordinance or regulation shall be clearly identified. The manner in which violation of any statute, ordinance or regulation is claimed shall be set forth.

*              *              *

**8.06 Construction of Pleadings**. - All pleadings shall be so construed as to do substantial justice.

Pleadings give notice to the parties and the trial court of the issues to be tried. Courts should liberally construe complaints in favor of the plaintiff when considering a motion to dismiss. ***White v. Revco Discount Drug Centers, Inc.,*** 33 S.W.3d 713, 718 (Tenn. 2000). "'A complaint "need not contain in minute detail the facts that give rise to the claim," so long as the complaint does "contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial."'" ***Givens v. Mullikin,*** 75 S.W.3d 383, 399 (Tenn. 2002)(quoting ***White,*** 33 S.W.3d at 725 (quoting ***Donaldson v. Donaldson***, 557 S.W.2d 60, 61(Tenn. 1977)). Further, averments of time and place are not required if they are unnecessary to give the defendants notice of the claim. ***Taylor v. Lakeside Behavioral Health System***, No. W2009-00914-COA-R3-CV, 2010 WL 891879, *11 (Tenn. Ct. App. March 15, 2010).

We have reviewed the second amended complaint and find that it does aver sufficient facts to put CHHC on notice of the claim. The complaint alleges that Mr. Browning resided at CHHC from September 2004 until July 19, 2006. It alleges that CHHC was understaffed, causing Mr. Browning to suffer harm from dehydration, malnutrition, pain and suffering, poor hygiene, mental anguish, humiliation, and death. The complaint also alleges that Mr.

-16-

Browning required assistance with daily activities, and that CHHC failed to provide assistance. Further, the complaint alleges that CHHC was aware of the neglect of it residents that was occurring due to "staffing problems." As to negligence, the allegations in the complaint span three pages and specifically allege that CHHC beached a duty they owed to Mr. Browning through allegations such as a failure to provide him with basic and necessary care and supervision; failure to protect him from abuse and neglect; failure to adequately hire, train, supervise and retain a sufficient staff; failure to ensure that Mr. Browning received the prescribed treatment and diet, necessary supervision, and appropriate care; and a failure to comply with state and federal law. The complaint then alleges that Mr. Browning's injuries were proximately caused by the acts or omissions described. Additionally, the complaint alleges causes of action for : negligence *per se* based upon the Tennessee Nursing Home Residents Rights Act, Tenn. Code Ann. § 68-11-901 *et seq.*; gross negligence, willful, wanton, reckless, malicious and/or intentional misconduct; negligence pursuant to the Tennessee Medical Malpractice Act, Tenn. Code. Ann. § 29-26-115, *et seq.*; violation of the Tennessee Adult Care Protection Act, Tenn. Code. Ann. § 71-6-101 *et seq.*; negligent or intentional misrepresentation based upon representations that the defendants had adequate staff; violations of the Tennessee Consumer Protection Act, Tenn. Code. Ann. § 47-18-101 *et seq*; and survival and wrongful death claims. As to the medical malpractice claim, the complaint specifically alleges that CHHC owed a duty to Mr. Browning and breached that duty through allegations such as the failure to provide and ensure adequate nursing care plans; failure to provide adequate therapy and exercise; failure to provide care, treatment and medication in accordance with the physician's orders; failure to timely notify the physicians of significant changes in Mr. Browning's condition; failure to adequately and appropriately monitor Mr. Browning; failure to provide adequate treatment for persistent, unresolved problems; failure to provide adequate fluids to Mr. Browning; failure to transfer Mr. Browning to a hospital when he developed conditions beyond the treatment capabilities of CHHC; and failure to maintain medical records.

After reviewing the complaint, we find that the Appellant pled sufficient facts to give notice to CHHC of the claims against it. Further, the Appellant complied with Tenn. R. Civ. P. 8.05 and the requirements for pleading violations of a statute by specifically alleging violations of the Tennessee Nursing Home Residents Rights Act, Tenn. Code Ann. § 68-11-901 *et seq*; the Tennessee Medical Malpractice Act, Tenn. Code. Ann. § 29-26-115, *et seq.*; the Tennessee Adult Care Protection Act, Tenn. Code. Ann. § 71-6-101 *et seq.*; and the Tennessee Consumer Protection Act, Tenn. Code. Ann. § 47-18-101 *et seq.* Consequently, we find that the trial court erred in dismissing the complaint for failure to state with sufficient particularity the alleged acts of negligence.

Finally, we address the Appellant's contention that the trial court erred in dismissing the complaint for failure to provide notice to CHHC as required by Tenn. Code Ann. §29-26-121. In 2008 the Tennessee legislature made substantial changes to the Medical Malpractice Act, Tenn. Code Ann. § 26-26-115 *et seq*. These amendments went into effect on October 1, 2008, five days before this action was filed. At the time this complaint was filed Tenn. Code. Ann. § 26-26-121 (2008) provided in pertinent part:

> (a)(1) Any person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider against whom the potential claim is being made at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state. Attached to the written notice shall be a list of all health care providers to whom notice is being given pursuant to this section.

According to 29-26-121(b)(2008) when a complaint was filed alleging medical malpractice, "the pleadings shall state whether each party had complied with subsection (a) and shall provide such evidence of compliance as the court may require to determine if the provisions of this section have been met." Pursuant to the statute, the trial court has discretion to excuse compliance for "extraordinary cause shown." Tenn. Code Ann. § 29-26-121(2008). Moreover, according to the statute in effect in 2008, if notice was given as provided by the statute, the applicable statute of limitations would be extended by up to ninety days. Tenn. Code Ann. § 29-26-121(2008).[6] The purpose of this notice requirement and 60 day period has been described by one commentator as follows:

> to give the defendant the opportunity to investigate and perhaps even settle the case before it is actually filed. At a minimum, it will give the defendant the opportunity to gather information before suit is filed and should eliminate the need for extensions

---

[6]Tenn. Code Ann. § 29-26-121 was amended effective July 1, 2009. The 2009 amendment clarified who had to receive notice and explicitly stated what information must be contained in the notice. The amendments also clarified when and how notice was effective and increased the statute of limitations extension to 120 days. Tenn. Code. Ann. § 29-26-121(2009); *see also* Day, John A., *Med Mal Makeover 2009 Act Improves on '08*, 45-JUL Tenn. B.J. 14 (July 2009).

of time to answer the complaint or slow-walk discovery.

Day, John A., *Med Mal Makeover 2009 Act Improves on '08*, 45-JUL Tenn. B.J. 14 (July 2009).

Appellant concedes that notice was not provided to CHHC prior to filing the complaint as required by Tenn. Code. Ann. § 29-26-121. On appeal, however, the Appellant contends that the notice requirement does not apply to its claim. Alternatively, in the event that the requirement does apply, the Appellant contends that it substantially complied with the notice requirement. In support of the argument that the notice requirement is not applicable to its claim, Appellant argues that (1) the original action, which was voluntarily non-suited, was filed prior to the enactment of the notice requirement, and (2) the second action was filed a mere five days after the requirement went into effect and compliance was impossible because while the statute extended the statute of limitations period, it did not extend the savings statute period.

Because the notice requirement is such a recent enactment, there is a dearth of cases interpreting and construing the requirement and the "extraordinary cause exception." One of only several cases which have even considered the requirements of Tenn. Code Ann. §29-26-121 is *Jenkins v. Marvel*, 683 F. Supp. 2d 626 (E.D. Tenn. Jan. 14. 2010). In *Jenkins*, the plaintiff originally filed a medical malpractice claim prior to the amendments to Tennessee's Medical Malpractice Act. *Id.* at 629. However, the plaintiff chose to take a voluntary non-suit and dismissed the original action on October 18, 2007. *Id.* The *Jenkins* plaintiff chose to re-file the medical malpractice claim on October 17, 2008, seventeen days after the amendments went into effect. *Id.* The defendants in *Jenkins* filed a motion to dismiss, arguing that the plaintiff had failed to comply with the notice requirement in the Medical Malpractice Act which became effective on October 1, 2008. *Id.* at 637. As in the case before us, the *Jenkins* plaintiff argued that the amendments should not apply to their case. *Id.* at 638. The plaintiff contended that the underlying purpose of the statute had been met. *Id.*

In considering the motion to dismiss, the *Jenkins* court first compared Tennessee's statute to a similar statute in Texas, Texas Civil Practice and Remedies Code § 74.051 and the intent behind the Texas statute as found by Texas courts. *Id.* The *Jenkins* court found the Texas statute helpful as the Tennessee statute and the Texas statute were very similar.[7]

_____

[7]As stated by the *Jenkins* court, Texas Civil Practice and Remedies Code § 74.051(a) provides:

(continued...)

-19-

***Id.*** As stated by the ***Jenkins*** court, the purpose behind the Texas statute was to "'facilitate discussion of the merits of a potential health care claim and thereby initiate amicable settlement negotiations,'" (quoting ***Phillips v. Sharpstown General Hosp.,*** 664 S.W.2d 162, 168 (Tex. App. 1983), and to "'facilitate the early identification of unmeritorious claims.'" ***Id.*** (quoting ***Schepps v. Presbyterian Hosp. Of Dallas***, 652 S.W.2d 934, 937 (Texas. 1983)).

The ***Jenkins*** court then reviewed the legislative history behind the Tennessee statute, noting that there was no Tennessee case law discussing the purpose behind the statute. ***Id.*** at 639. The ***Jenkins*** court found that the State of Tennessee Senate Republican Caucus newsletter for the week of April 2, 2007 discussed the purpose behind the new requirements. ***Id.*** The newsletter stated "'[t]he legislation is designed to reduce the number of frivolous lawsuits filed in Tennessee each year...by requiring early evaluation and streamlined disclosure of medical records.'" ***Id.*** (quoting TN Senate Republican Caucus Weekly Wrap, April 6, 2007). The ***Jenkins*** court also considered an April 24, 2008 news release from the Senate Republican caucus which provided:

> The State Senate has approved and sent to the governor major tort reform legislation aimed at weeding out meritless medical malpractice lawsuits.
>
> *                    *                    *
>
> Key provisions in this bill include:
>
> - Notice would be provided at least two months before a lawsuit is filed to help resolve the case before it goes to court.

***Id.*** (citing TN News Rel., S. Rep. 4/24/2008). Based on this history, the ***Jenkins*** court found that the purpose behind the Tennessee statute was similar to the purpose behind the Texas

---

[7](...continued)
> Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician, or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim.

***Jenkins***, 683 F. Supp. 2d at 638. The court also noted that § 74.051(b) required plaintiffs to include a statement of compliance in their complaint and provided that plaintiffs may have to provide additional evidence of compliance.

statute - "to provide notice to potential parties and to facilitate early resolution of cases through settlement." *Id.*

Utilizing this intent, the *Jenkins* court held that the plaintiff's second action should not be dismissed as the defendants had actual notice of the claim and there was no need for the plaintiff to provide the statutory notice. *Id.* The court found that the defendants "clearly" had more than sixty days notice of the plaintiff's claims, that in fact the defendants had a year's notice, and had the opportunity to enter into any attempts at resolution. *Id.* The court also found that the plaintiff's failure to state compliance with the statute in the complaint was unnecessary under the circumstances. *Id.* Further, the court noted that the plaintiff had complied with another requirement of the Medical Malpractice Act, the filing of a Certificate of Good Faith as provided by Tenn. Code Ann. § 29-26-122, and therefore the legislature's goal of ensuring that claims filed had merit was met. *Id.* Because the defendants had notice of the claim through the filing of the first lawsuit, before the notice requirements were in effect, and because the plaintiff had demonstrated the claim had some merit, the *Jenkins* court found that the purpose of the statute had been met. *Id.* Therefore, the court found that under the unique circumstances of the case, the plaintiff's noncompliance with the notice requirements did not warrant a dismissal. *Id.*

We find that the case before us is virtually identical to *Jenkins*. As in *Jenkins*, the Appellant filed a complaint which included allegations of medical malpractice before the notice requirement was in effect and subsequently non-suited the first action. Then, as in *Jenkins*, mere days after the amendments went into effect, the Appellant re-filed the complaint which again included allegations of medical malpractice. As in *Jenkins*, the defendants had actual notice of the claim at least one year before the Appellant filed the current action by virtue of the previously filed claim. Finally, as in *Jenkins*, the Appellant filed a Certificate of Good Faith wherein the Appellant's attorney certified that he had consulted with an expert, competent to testify under Tenn. Code. Ann. §29-26-115, and that there was a good faith basis to maintain the action. [8]

---

[8]We recognize that the Appellant's Certificate of Good Faith was not filed with the original complaint in this action. However, at that time the statute provided that a plaintiff must only file the Certificate of Good Faith within ninety days of filing the complaint. Tenn. Cod. Ann. § 29-26-122 (2008). This statute was subsequently amended, effective July 1, 2009, to provide that the Certificate of Good Faith must be filed with the complaint. Tenn. Code. Ann. 29-26-122 (2009). Further, by order entered May 22, 2009, the trial court granted Appellant an extension until June 22, 2009 to provide a Certificate of Good Faith. Appellant then filed a Certificate of Good Faith with the second amended complaint on June 22, 2009. Accordingly, the timeliness of the Appellant's filing of the Certificate of Good Faith does not affect this decision.

We recognize that *Jenkins* is not binding upon this Court. However, we too are faced with deciding this case with no Tennessee case law discussing the purposes behind the notice requirement and the "extraordinary cause exception" found in Tenn. Code. Ann. § 29-26-121 (2008). After reviewing the requirements as they existed in 2008, the subsequent amendments to Tenn. Code Ann. § 29-26-121 which went into effect on July 1, 2009, the reasoning in *Jenkins*, and commentary from others discussing the reform to Tennessee's Medical Malpractice Act in 2008 and 2009, this Court finds the reasoning in *Jenkins* sound and will apply the same analysis to this case.[9] The purpose behind Tenn. Code. Ann. § 29-26-121 and other recent amendments to the Medical Malpractice Act was to provide notice to health care providers of potential claims against them so that they might investigate the matter and perhaps settle the claim, and also to reduce the number of meritless claims which were filed. See *Jenkins*, 683 F. Supp. 2d 626 (E.D. Tenn. 2010); and Day, John A., *Med Mal Makeover 2009 Act Improves on '08*, 45-JUL Tenn. B.J. 14 (July 2009). However, the Tennessee legislature recognized the need to create an exception to the notice requirement so that it would not be an absolute bar to all claims whatsoever for failure to comply with the notice requirements. The legislature created such an exception by providing that "[t]he court has discretion to excuse compliance with the section only for extraordinary cause shown." Tenn. Code Ann. § 29-26-121(b). Accordingly, we review the trial court's decision not to allow an exception under an abuse of discretion standard. A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

We find that the trial court erred in not excusing compliance with the notice requirements. It is well settled that Tennessee law favors the resolution of all disputes on the merits. *Henley v. Cobb*, 916 S.W.2d 915, 916 (Tenn. 1996)(citations omitted). CHHC had actual notice of the claim more than one year prior to the filing of the present action. Accordingly, CHHC had ample time to investigate and possibly settle the claim. Moreover, the Appellant filed a Certificate of Good Faith demonstrating that the claim had merit. Consequently, all purposes behind the 2008 amendments to the Medical Malpractice act were met. Under the unique circumstances of this case, the trial court should have exercised its discretion and excused compliance with the deadlines imposed by Tenn. Code Ann. §29-26-121. Therefore, we reverse the trial court's dismissal of the Appellant's medical malpractice claims on the basis that the Appellant failed to comply with Tenn. Code Ann. §29-26-121.

---

[9]This Court recognizes that the trial court entered its order on August 3, 2009, and therefore the trial court did not have the benefit of the *Jenkins* opinion which was filed on January 14, 2010.

***Conclusion***

For the foregoing reasons we reverse the decision of the trial court dismissing Appellant's complaint and remand this case to the trial court for further proceedings. Costs of this appeal are taxed to the Appellee Claiborne and Hughes Health Center for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE